# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MATTHEW T. GARDINER,

     **Plaintiff,**

**v.**

**BILL McBRYDE, et al.,**

     **Defendants.**

**Case No. 15-3151-DDC-JPO**

## MEMORANDUM AND ORDER

Pro se plaintiff[1] Matthew Gardiner brings this civil rights action asserting 42 U.S.C. § 1983 and state law tort claims against defendants Bill McBryde, Gene Ward, Rob Gant, Teresa Cantrell, Clemente Torres, Randolf Graves, Steve Bailem, Tyler Kulow, Ambrose Gallardo, John "Trey" Steckel, and the Seward County, Kansas Board of Commissioners. Plaintiff alleges defendants used excessive force and deprived him of medical care and thus violated his rights under the Eighth Amendment to the United States Constitution.

Plaintiff was incarcerated at the Seward County Jail ("SCJ") when the events giving rise to this lawsuit allegedly occurred. Defendants Gant, Cantrell, Torres, Graves, Bailem, Kulow, Gallardo, and Steckel served as detention officers at the SCJ. Defendant McBryde was (and is) the Sheriff and defendant Ward was (and is) the Undersheriff. Defendants have filed a Motion for Summary Judgment (Doc. 124). Plaintiff has filed a Response (Doc. 133), and defendants

---

[1]     Because plaintiff proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

have filed a Reply (Doc. 152). Plaintiff has filed a Motion for Leave to File Rebuttal to Reply (Doc. 153) which defendants oppose (Doc. 154).

## I.     Plaintiff's Motion for Leave to File Rebuttal to Reply

As an initial matter, the court must decide plaintiff's motion to file a "rebuttal to reply." (Doc. 153). Defendants filed a Response opposing plaintiff's request (Doc. 154). The court construes plaintiff's request as a motion to file a surreply.

Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply. Surreplies typically are not allowed. *Taylor v. Sebelius*, 350 F.Supp.2d 888, 900 (D.Kan. 2004), *aff'd on other grounds*, 189 F. App'x. 752 (10th Cir. 2006). Instead, surreplies are permitted only with leave of court and under "rare circumstances." *Humphries v. Williams Natural Gas Co.*, No. 96–4196–SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted). For example, when a moving party raises new material for the first time in a reply, the court should give the nonmoving party an opportunity to respond to that new material (which includes both new evidence and new legal arguments) in a surreply. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003). The rules governing surreplies "are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." *Humphries*, 1998 WL 982903, at *1 (citation and internal quotation marks omitted).

Here, plaintiff argues that he should get to file a surreply to address "several of the defendants['] statements" that "question the authenticity of documents plaintiff submitted as exhibits" and "statements . . . made with the sole intent to the mislead" the court. Doc. 153 at 2.

But, plaintiff also acknowledges that he is not sure if a surreply is "required, or even allowed." *Id.* Plaintiff did not attach a proposed surreply to his motion.

Defendants argue that plaintiff has not asserted that they "raised new evidence or new arguments in their reply brief." Doc. 154 at 1. Defendants also assert that granting plaintiff's motion would likely require the court to reschedule the trial. And, as surreplies are "disfavored," the court should deny plaintiff's motion.

The court agrees that plaintiff's motion does not seek leave respond to new material submitted by defendants. Instead, plaintiff appears to ask the court to grant him another opportunity to rehash argument that he has already presented once or could have made in his Response.

Plaintiff contends that defendants question the authenticity of the exhibits he filed. The court construes plaintiff's assertion to refer to defendants' statement in their Reply that plaintiff's Exhibit RRI (Doc. 133-3 at 136) contained writing that was not there when defendants produced the policy in discovery. Doc. 152 at 19. But defendants attached this policy as Exhibit 8 to their Memorandum in Support. Doc. 125-9. And, plaintiff knew about the discrepancy between the two exhibits when he filed his Response. Doc. 133-3 at 51 ("The defendants have chosen to provide a much more politically correct version to the court. Compare the plaintiff's Exhibit 'RRI' to defendants' Exhibit '8'"). This is precisely why our court typically does not allow surreplies. *See Hall v. Whitacre*, No. 06-1240-JTM, 2007 WL 1585960, at *1 (D. Kan. May 31, 2007) (finding "utterly no justification for the surreply" that "essentially provides additional and longer arguments, which also could have been submitted in the first response"); *see also E.E.O.C. v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992)

(refusing to consider a surreply because the parties' briefing "must have an end point and cannot be allowed to become self-perpetuating").

Plaintiff also asserts that defendants made misleading statements to the court. But plaintiff provides no information about which statements he contends are misleading. Plaintiff has not shown that leave to file a surreply is necessary to respond to new material asserted for the first time in defendants' reply. And, as surreplies are permitted only in rare circumstances, the court exercises its discretion and denies plaintiff's Motion for Leave to File Rebuttal to Reply (Doc. 153).[2]

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo*

---

[2]       The court notes that it previously gave plaintiff leave to file an extended 123-page Response to defendants' Motion for Summary Judgment. Doc. 143. This relief expanded plaintiff's briefing opportunity by about 300%. *See* D. Kan. Rule 7.1(e). Plaintiff has had ample room to respond to defendants' arguments in favor of summary judgment.

*Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.    Motion for Summary Judgment

### A.  Uncontroverted Facts

The following facts come from the summary judgment record—including the Pretrial

Order, the *Martinez* report,[3] and properly submitted affidavits and exhibits—and either are

uncontroverted or construed in the light most favorable to plaintiff.[4]

### June 14, 2014:  The Hog-Tying Incident

Plaintiff was incarcerated at SCJ from June 14 to 27, 2014.  Doc. 120 at 2.  Plaintiff

arrived when the day shift was on duty, and the night shift took over around 7:00 pm.  Doc. 125-

2 at 2 (¶ 5).  The night shift consisted of officers Torres, Bailem, Steckel, and Stallbaumer.  *Id.* (¶

6).  Plaintiff alleges defendants Torres, Bailem, and Steckel used excessive force and

unconstitutional bodily restraints on him when they "hog-tied" him during the evening of June

14, 2014.  Doc. 133-1 at 25, 26.  Defendants concede that genuine issues of fact exist for

plaintiff's claim based on the hog-tying incident against Torres, Bailem, and Steckel.  And,

defendants have not moved for summary judgment against plaintiff's claims related to the hog-

tying incident against defendants Torres, Bailem, and Steckel.  Doc. 125 at 5.

Plaintiff contends he was "slammed to the ground" during the incident and "feared for his

life."  Doc. 133-1 at 25.  Plaintiff was "rear cuffed."  *Id.*  While he was on the ground, defendants

---

[3]      A *Martinez* report is "a court-authorized investigation and report by prison officials."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  On summary judgment, a *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Id.* at 1111.  But "absent valid challenge," the *Martinez* report "may be treated as providing uncontroverted facts."  *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017).

[4]      Whether plaintiff's claim survives summary judgment depends on whether defendants have qualified immunity.  The court thus views the facts in the light most favorable to the plaintiff because, when "[i]n resolving questions of qualified immunity, courts are required to view the facts in the light most favorable to the party asserting the injury . . . ."  *Scott v. Harris*, 550 U.S. 372, 377 (2007).

Torres, Bailem, and Steckel "removed either plaintiff's shorts or a string from his shorts." *Id.*; Doc. 133-2 ¶ 46; Doc. 42 ¶ 11; Doc. 43 ¶ 4; Doc. 44 ¶ 4. Torres, Bailem, and Steckel then "put leg-irons on [his] ankles, brought his ankles to his buttocks and connected the leg-irons to the handcuffs." Doc. 133-2 ¶ 66; Doc. 42 ¶ 12; Doc. 43 ¶ 6; Doc. 44 ¶ 6. Plaintiff was restrained in this manner for about 10 or 20 minutes. Doc. 42 ¶ 13; Doc. 43 ¶ 7; Doc. 44 ¶ 7.

Plaintiff contends that defendants seriously injured him during the hog-tying incident on June 14 and denied him access to medical care for 22 hours. Doc. 133-1 at 40, 42. And, though a "medical officer" was on duty, SCJ policy does not require the medical officer to have any medical training. *Id.* at 41; Doc. 133-3 ¶ 129.

**June 15, 2014: Plaintiff's Emergency Room Visit**

Some time after the shift change on the morning of June 15, 2014, plaintiff notified the control tower that he needed medical attention. Doc. 133-2 ¶ 128. Officer Kulow and Sergeant Cantrell both visited plaintiff to check on him during the morning. *Id.* ¶¶ 130, 133. Later, at 4:15 pm, Sergeant Cantrell learned that plaintiff still was complaining of pain and his skin was hot to the touch. Doc. 125-2 (¶ 8); Doc. 125-4 at 1. Sergeant Cantrell "phoned Captain Gant to inform him" and Captain Gant "told [her] to call Southwest Medical Center and speak to a nurse in the emergency room." Doc. 125-4 at 1. Sergeant Cantrell did so and spoke with Dr. Chacon about plaintiff's symptoms. *Id.* at 2. Based on Dr. Chacon's instructions, Officer Kulow transported plaintiff to the emergency room at around 4:30 pm. *Id.* Plaintiff arrived at the Southwest Medical Center Emergency Room around 4:58 pm. Doc. 125-10 at 2.

At the emergency room, Dr. Chacon examined plaintiff. *Id.* Plaintiff complained of pain in his chest wall and ribs that had started 24 hours earlier, and pain in his left shoulder. *Id.* at 2, 6. Plaintiff reported he had been "beaten senseless." *Id.* at 6. Dr. Chacon's report notes the

exam was not limited. *Id.* Plaintiff had "no other complaints such as nausea[,] vomiting[,] constipation[, or] diarrhea." *Id.*[5] The exam revealed generally normal results.[6] *Id.* Plaintiff's X-rays suggested a "contusion and probably nondisplaced fracture" in plaintiff's right tenth rib. *Id.* at 16. Plaintiff's shoulder X-rays "disclose[d] no fracture or dislocation." *Id.* at 17. Dr. Chacon prescribed an antibiotic and recommended a follow up "with the primary care provider that cares for inmates." *Id.* at 8. Plaintiff was released from the emergency room at about 7:00 pm on June 15. *Id.* at 4. Officer Kulow filed a report about the emergency room visit with Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell. Doc. 125-6. The report stated that plaintiff "needs to have a follow-up appointment with our primary care provider within the next three to five days." Doc. 125-6 at 1.

Plaintiff contends Officer Kulow "told the ER staff not to prescribe any pain medication" and "removed [him] from the E.R. at exactly 7pm when his duty shift ended." Doc. 133-1 at 45. Plaintiff also contends Officer Kulow made a false statement in his report to his superior officers. The report recited that plaintiff had "no fractures or breaks to any of his ribs." Doc. 125-6 at 1. But X-rays had revealed plaintiff had a "hairline nondisplaced fracture" on his tenth rib. Doc. 125-10 at 16.[7]

---

[5]     Plaintiff also contends his ear was injured and swelling. Doc. 133-1 at 44; Doc. 133-2 ¶ 167. But the medical records do not support this allegation. The records indicate Dr. Chacon did an ear, nose, and throat inspection and marked them as "normal." Doc. 125-10 at 7.

[6]     Plaintiff asserts that the medical records are "inconsistent and incomplete." Doc. 133-1 at 52. He alleges that the records do not include any reference to the abrasions on his body. Plaintiff also notes the records incorrectly state that he has "Thrombocytapenia" (a blood disorder affecting the blood's ability to clot) instead of "Thalassmia" (a blood disorder related to anemia). *Id.* at 53. And, plaintiff asserts the records "contradict" themselves because he informed the doctor he was "beaten senseless" but the records do not note that he felt "threatened or abused." *Id.* at 55. The court finds that the alleged mistakes or oversights in the medical records do not materially affect plaintiff's claims.

[7]     Defendants controvert plaintiff's assertion that Officer Kulow made a "knowingly" false report. Doc. 152 at 17. Defendants acknowledge the report was incorrect but contend the record cannot support a

8

**Other Requests for Medical Care**

Plaintiff's antibiotic prescription was filled, and he started taking the medication on June 19, 2014. Plaintiff refused his medication several times during his imprisonment at SCJ. Doc. 125-7 at 1. Plaintiff never was taken to a follow-up medical appointment. Doc. 133-2 ¶ 178.[8] Plaintiff does not allege that he sought follow-up care immediately when he left SCJ on June 27, 2014.

Plaintiff did not make a written request for follow-up medical treatment during his stay at SCJ because he did not have a writing instrument. Doc. 133-2 ¶ 223. Plaintiff contends he made many verbal requests for care during his stay at SCJ. *Id.* ¶¶ 223, 225, 226. And, on several occasions, plaintiff was given ice for swelling. *Id.* ¶ 227. Plaintiff asserts that he "still suffers from injuries he received in the vicious attack," including "chronic pain," "swelling," and "disfiguring abrasions on his neck and upper body." Doc. 133-1 at 46. Plaintiff next sought medical care for his injuries in June, 2015—more than a year after the incident. Doc. 133-1 at 48; Doc. 133-2 ¶ 216. Plaintiff was diagnosed with chronic pain, swelling in his ear, and chronic pain in his left shoulder. *Id.*

**Alleged Failure to Train, Supervise, Discipline, and Investigate.**

Liberal, Kansas is the county seat for Seward County. Plaintiff contends "[t]he Liberal, Kansas Police Department banned the use of hog-tie restraints on December 9, 2008." Doc. 133-

---

finding that any misrepresentation was knowing. *Id.* The court agrees. The summary judgment evidence contains no facts establishing that Officer Kulow's inaccuracy in his report was done knowingly.

[8] Plaintiff contends various defendants refused to take him, but defendants controvert this fact. Doc. 133-1 at 46; Doc. 152 at 17. Defendants point out that plaintiff's declaration indicates that he was not taken to a follow-up exam—and not that one or more defendants refused to take him to a follow-up appointment. Doc. 152 at 17; Doc. 133-2 ¶ 178. The defendants have it right. Plaintiff offers no admissible evidence establishing that a defendant refused to take him for follow-up treatment.

1 at 27.[9]  SCJ's policies[10] do not address hog-tying inmates, but they do advise that leg irons should be placed "on the leg with the pants leg inside the cuff . . . ."  Doc. 133-2 ¶ 92; Doc. 133-3 at 57.  No defendant has been trained on use of hog-tying in the SCJ.  Doc. 133-2 ¶¶ 88–94.  Plaintiff asserts hog-tying is a "common form of punishment at the jail" and that Sheriff McBryde, Undersheriff Ward, and Captain Gant were aware of the practice.  Doc. 133-1 at 27; Doc. 133-2 ¶ 99.[11]  Plaintiff asserts Sheriff McBryde, Undersheriff Ward, and Captain Gant did not punish or reprimand Officers Torres, Bailem, or Steckel for the June 14 incident.  Doc. 133-2 ¶¶ 272–73.[12]

Plaintiff asserts Officers Torres, Bailem, and Steckel violated SCJ policy because they did not file a "use of force" report after the June 14 hog-tying incident.  Doc. 133-2 ¶ 119.  And, they did not report his injuries to anyone.  *Id.* ¶ 122.  Also, because no report was filed, Sheriff

---

[9]    Defendants do not controvert the assertion that Liberal Police Department policy banned hog-tying.  Doc. 152 at 7.  But the exhibit plaintiff cites does not support his assertion.  *See* Doc. 133-3 at 34–41.  Indeed, the court finds no evidence in the record to support plaintiff's contention that the Liberal Police Department banned the technique.  Nevertheless, the court considers this allegation uncontroverted for purposes of this Order.

[10]    In some places, plaintiff appears to assert that SCJ has no written policies.  *See* Doc. 133-1 at 49.  But, in others, plaintiff alleges that certain defendants failed to follow SCJ's policies or that the polices are "unconstitutional."  *See, e.g.*, *id.* at 39, 49, 50.  And, plaintiff quotes from SCJ's written policies.  *Id.* at 40.  Even though it construes the facts in the light most favorable to plaintiff, the court disregards plaintiff's allegations that no written policies exist.  In short, nothing in the summary judgment record supports plaintiff's argument on this point.

[11]    Defendants controvert this fact, asserting the record does not support it.  Doc. 152 at 8.  The court agrees that the record does not support plaintiff's assertion that hog-tying is a common form of punishment at SCJ.  Plaintiff has presented no admissible evidence that other inmates were hog-tied.  Plaintiff submits exhibits that show several other inmates were "restrained."  Doc. 133-2 ¶ 99; Doc. 133-3 at 31, 65–67.  But nothing else in the record will support plaintiff's assertion that these restrained inmates were hog-tied.

[12]    Plaintiff also contends he was hog-tied a second time on June 16 as punishment for "knocking his lunch tray to the floor."  Doc. 133-1 at 29.  But plaintiff never made this allegation in his Second Amended Complaint (Doc. 115).  And the Pretrial Order (Doc. 120) contains no claim based on this alleged second hog-tying incident.  Plaintiff thus cannot raise this issue for the first time in his Response to defendants' Summary Judgment Motion.  The court disregards plaintiff's contention that he was hog-tied on June 16.

McBryde, Undersheriff Ward, or Captain Gant did not investigate any purported use of force. *Id.* ¶ 120. Although Sheriff McBryde, Undersheriff Ward, and Captain Gant were notified that plaintiff required medical care on June 15, they never investigated the incident. *Id.* ¶¶ 137, 175. And, plaintiff contends, defendants failed to follow SCJ policy, which requires observation of an inmate every 15 minutes after force is used against an inmate. *Id.* ¶ 126. No one reprimanded Officers Torres, Bailem, Steckel, Graves, Gallardo and Kulow, Sergeant Cantrell, or Captain Gant. Doc. 133-2 ¶ 272. And, plaintiff asserts Sheriff McBryde, Undersheriff Ward, and Captain Gant failed to train employees in First Aid, CPR, and Mental Health recognition. *Id.* ¶¶ 108, 109, 209–214.

### B. Analysis

Plaintiff asserts claims under 42 U.S.C. § 1983. Plaintiff also brings several state law tort claims. The court addresses the § 1983 claims first, and then turns to the state law claims.

#### 1. § 1983 Claims

A defendant is liable under § 1983 if, under color of state law, the defendant deprives a person of a constitutional right. 42 U.S.C. § 1983. The court categorizes plaintiff's § 1983 claims into four categories: (a) excessive use of force, (b) administrative failures, (c) denial of medical care, and (d) conspiracy. Doc. 120 at 14–15. Plaintiff also alleges Officers Bailem, Torres, and Steckel conspired to deny him medical care, falsify documents and reports, and cover up the incident. Doc. 120 at 15. The court addresses each category of claims, in turn, below.

##### a. Excessive Use of Force Claims

Plaintiff brings claims of excessive use of force, excessive use of deadly force, deprivation of bodily liberty, and failure to protect against Officers Bailem, Torres, Steckel,

Graves, and Gallardo. Doc. 115 at 35–37. Officers Bailem, Torres, and Steckel do not move for summary judgment against these claims. Doc. 125 at 3. And, plaintiff concedes he does not have viable excessive force claims against Officers Graves and Gallardo. Doc. 133-1 at 64 (noting that "defendants are not liable for the June 14 or 16 use of force."). Thus, plaintiff has abandoned his excessive force claims against Officers Graves and Gallardo. And to the extent plaintiff hasn't abandoned these claims, the court grants summary judgment against plaintiff's excessive use of force claims against Officers Graves and Gallardo. The claims against Officers Bailem, Torres, and Steckl will proceed to trial because defendant didn't seek summary judgment against these claims.

### b. Administrative Failures

Plaintiff brings claims against The Board of County Commissioners, of Seward County, Kansas ("Board"), for: (1) Failure to Train, (2) Failure to Supervise, (3) Failure to Investigate, (4) Failure to Discipline, and (5) Deliberate Indifference to Serious Medical Need. Doc. 120 at 8, 9, and 15. Plaintiff also asserts failure to train and supervisory liability claims against Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell. Doc. 120 at 9, 10, and 15. The court addresses the claims against each defendant, separately, below.

### i. The Board of County Commissioners, Seward County

Defendants argue that the Board can incur no liability on a theory that they failed to train, supervise, investigate, or attend to medical needs. Defendants assert that even if all the facts plaintiff asserts are true, the Board is entitled to summary judgment as a matter of law because it is not responsible for the policies or procedures of the Seward County Jail. Instead, defendants assert, the county sheriff controls SCJ and its employees. *See* Kan. Stat. Ann. § 19-1903 (The Sheriff keeps the jail "by himself" and is responsible for it.); Kan. Stat. Ann. § 19-805 (The

Sheriff is responsible for default of undersheriff and deputies.). Plaintiff contends that the Board implements the policies and customs in question, and so, the Board is liable because the policies in place allowed plaintiff's injuries. Doc. 133-1 at 60.

Plaintiff's claims against the Board fail as a matter of law. Under Kansas law, county commissioners are "not legally responsible for the hiring or training of personnel or promulgation of procedures . . . particularly with regard to jail operations." *Estate of Belden v. Brown Cty.*, 261 P.3d 943, 970 (Kan. Ct. App. 2011). And the "sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants." *Bd. of Cty. Comm'rs of Cty. of Lincoln v. Nielander*, 62 P.3d 247, 261 (Kan. 2003). The Board cannot be legally responsible for the policies of SCJ or Sheriff McBryde because it "may not require particular operational practices in a jail." *Estate of Belden*, 261 P.3d at 970. Without this authority, the Board "cannot be held legally liable for the deleterious consequences of substandard jail policies, procedures, or practices." *Id.* So, the court grants summary judgment against plaintiff's claims against the Board of County Commissioners.

### ii. Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell

Defendants argue the summary judgment record presents no triable issue on plaintiff's claims against Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell. They assert there is no evidence "in the record that Sheriff McBryde failed to properly train his employees working in the jail or that his alleged 'failure to train' caused any of the harm alleged by plaintiff." Doc. 125 at 27. Also, defendants contend that plaintiff's allegations against Sergeant Cantrell, Undersheriff Ward, and Captain Gant are "conclusory" and not supported by the record. *See id.* at 17, 22–23. Defendants cite a recent Tenth Circuit case—*Waller v. City and County of Denver*—to support their argument that plaintiff cannot "show an improper policy or

custom, deliberate indifference, or causation." Doc. 152 at 33 (citing *Waller v. City and Cty. of Denver*, 932 F.3d 1277 (10th Cir. 2019)). They assert that *Waller* applies to Sheriff McBryde because he is the "final policymaker." *Id.* at 31. Defendants also argue Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell are entitled to summary judgment based on qualified immunity because plaintiff cannot show that they violated plaintiff's rights. *Id.* at 33.

### 1. Plaintiff cannot show Sheriff McBryde, Undersheriff Ward, Captain Gant, or Sergeant Cantrell violated his constitutional rights by failing to train.

To establish liability on this theory, plaintiff must (1) show a policy or custom, which can take several forms, including formal policies, informal customs, decisions of employees with final authority, or failure to supervise or train employees; (2) establish "a direct causal link between the policy or custom and the injury alleged;" and (3) "demonstrate that the . . . action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller*, 932 F.3d at 1283–84 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference is a stringent standard of fault" requiring "proof that a[n] actor disregarded a known or obvious consequence of his action." *Id.* at 1284 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A § 1983 plaintiff can satisfy this standard when the actor "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1207 (10th Cir. 1998)).

Turning to plaintiff's failure to train claim, the court is mindful that "[t]o satisfy the stringent deliberate indifference standard, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Id.* at 1285 (quoting *Connick*, 563 U.S. at 62

14

(internal quotations omitted)).  Plaintiff argues that "constitutional violations involving the denial of medical care and the excessive force/unconstitutional restraints arose under circumstances that were usual and recurring . . ."  Doc. 133-1 at 96.  But the summary judgment record contains no admissible facts to support plaintiff's words.  Indeed, plaintiff never identifies any supporting facts at all.  Even when viewed in plaintiff's favor, the summary judgment record merely shows that SCJ employees did not have CPR/First Aid or mental health training.  *Id.* at 32–33.  Plaintiff does not identify any other similar incidents caused by lack of training.  He merely asserts that the existence of the policies is "direct evidence" that providing medical care to inmates "is a usual and recurring situation."  *Id.* at 95.  Under the governing legal standard, plaintiff's conclusory assertions can't create a genuine issue for trial on this claim.

Plaintiff also argues that "permitting jailers without medical training [to] decide whether a person in custody receives medical care states a deliberate indifference claim."  *Id.* at 98 (citing *Boswell v. Sherburne Cty.*, 849 F.2d 1117, 1123 (8th Cir. 1988)).  But *Boswell* differs from this case in many important aspects.  First, the plaintiff there was pregnant and experiencing clotting and extreme pain.  *Boswell*, 849 F.2d at 1119.  Second, the *Boswell* evidence showed multiple defendants had refused to contact medical professionals, even though they knew about the plaintiff's pregnancy and recent medical complications.  *Id.* at 1122–23.  The Eighth Circuit held that the plaintiff had "presented sufficient evidence" that defendants "were directed to use their own judgment about the seriousness of prisoners' medical needs, rather than being directed to consult trained medical personnel."  *Id.* at 1123.  And, the Eighth Circuit noted, the plaintiff had presented evidence that certain defendants acted with the purpose of minimizing costs by avoiding prisoner medical expenses.  *Id.*  Here, the summary judgment evidence doesn't show that any defendant was deliberately indifferent to plaintiff's medical needs.  Unlike the *Boswell*

plaintiff, plaintiff's only observable symptoms were scratches and bruises. And, plaintiff admits that when another officer determined his pain level was high, Sergeant Cantrell, at the direction of Captain Gant, contacted medical personnel to ask for medical advice for plaintiff's condition. The record does not present a triable issue whether defendants engaged in a "pattern of similar constitutional violations" or acted with "deliberate indifference." *Waller*, 932 F.3d at 1285; *see also Boswell*, 849 F.2d at 1123. The court thus grants summary judgment against plaintiff's failure to train claim.

### 2. Plaintiff cannot show that Sheriff McBryde, Undersheriff Ward, Captain Gant, or Sergeant Cantrell are liable as supervisors because the record doesn't show that they were "deliberately indifferent" to his medical needs.

Plaintiff also asserts Sheriff McBryde, Undersheriff Ward, Captain Gant, and Sergeant Cantrell are liable under § 1983 as supervisors. Doc. 133-1 at 111. To establish liability on this theory, a § 1983 plaintiff must establish (1) "the supervisor's subordinates violated the Constitution," (2) had personal involvement, (3) a causal connection between the alleged Constitutional violation and plaintiff's injury, and (4) a "culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). McBryde, Ward, Cantrell, and Gant all assert the record cannot show that they had a "culpable state of mind." Doc. 125 at 15, 21, 22, 24.

To establish a trial issue whether defendants had the required culpable state of mind, plaintiff must show that "the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." *Dodds*, 614 F.3d at 1196 (quoting *Serna v. Colo. Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). A supervisory role, by itself, does not suffice for § 1983 liability. *Id.* at 1198. But, "[p]roof of a supervisor's personal direction or knowledge of and acquiescence in a constitutional violation often suffice[s] to meet the personal involvement,

causal connection, and deliberate indifference prongs of the affirmative link requirement for § 1983 supervisory liability." *Id.*

Plaintiff argues that Sheriff McBryde, Undersheriff Ward, Sergeant Cantrell, and Captain Gant "delayed summoning medical care" and "refused to take plaintiff to the follow-up exam," Doc. 133-1 at 117, and that they failed to follow the doctor's written instructions. *Id.* at 114. But, the summary judgment record does not present a genuine issue whether these defendants possessed the culpable state of mind necessary to support an inference of "deliberate indifference."

At best, the record reflects that McBryde, Ward, Cantrell, and Gant were aware that plaintiff had injuries and that he should see the SCJ physician within a few days. It is not enough that these defendants knew that plaintiff needed another medical appointment. Plaintiff must show that these defendants had "actual knowledge" that he was denied medical care and that they "acquiesced in [the] continuance" of that deprivation. *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). Nothing in the record shows that McBryde, Ward, Cantrell, or Gant was aware that anyone had refused to take plaintiff for follow-up medical care. Construing the facts in a light most favorable to plaintiff, a factfinder reasonably could find defendants had negligently failed to schedule the follow-up appointment. But no evidence can support a finding that any defendant intentionally denied plaintiff medical care. And, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Thus, because the record does not present a triable issue whether McBryde, Ward, Cantrell, and Gant acted with deliberate indifference when plaintiff was not taken to the SCJ physician, the court grants defendants' Motion for Summary Judgment against plaintiff's failure to supervise claim.

### c. Denial of Medical Care

Plaintiff brings claims based on the theory that he was denied medical care. They are:

(1) Deliberate Indifference to Serious Medical Need against Sheriff McBryde; (2) Denial of

Adequate Medical Care against Sheriff McBryde, Undersheriff Ward, Captain Gant, Sergeant

Cantrell, and Officer Kulow; and (3) Interference with Medical Care against Officer Kulow.

And, the only claim against Officer Gallardo claims he denied plaintiff "medical care on June 16,

2014," June 17, 2014, June 20, 2014, and June 22, 2014 "while working in the 'control tower.'"

Doc. 133 at 81. All defendants move for summary judgment based on qualified immunity.

"[Q]ualified immunity is an affirmative defense to a section 1983 action . . . ." *Adkins v.

Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). "The doctrine of qualified immunity protects

government officials 'from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably."

*Pearson*, 555 U.S. at 231.

To establish a § 1983 claim against an individual defendant asserting a qualified

immunity defense, plaintiff must show facts that "make out a violation of a constitutional right,"

and demonstrate that "the right at issue was 'clearly established' at the time of defendant's

alleged misconduct." *Id.* at 232 (citation omitted). A court has discretion to determine "which

of the two prongs of the qualified immunity analysis" it should address first "in light of the

circumstances in the particular case at hand." *Id.* at 236. But the court must grant qualified

immunity unless the plaintiff shoulders his "heavy burden" to make both prongs of this showing. *Stevenson v. Cordova*, 733 F. App'x 939, 942 (10th Cir. 2018).

Plaintiff thus bears the burden to establish that he had a clearly established right to medical treatment during his incarceration at SCJ in 2014. Plaintiff alleges various defendants denied him medical care, thus violating his Eighth Amendment rights.

### i. Does the summary judgment evidence present a genuine issue of a constitutional violation?

The Supreme Court has recognized "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). To present a genuine issue of an Eighth Amendment violation, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. The "deliberate indifference" test involves "'both an objective and a subjective component.'" *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The court considers each component, below.

### 1. Eighth Amendment Analysis: Objective Component

To prevail on an Eighth Amendment claim, the prisoner "must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Mata*, 427 F.3d at 751. The Tenth Circuit has held that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted). A delay in medical treatment "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id.* (citation omitted). "The substantial harm

requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

In his Response, plaintiff contends that he suffered substantial harm because the evidence shows "that he was in extreme pain from serious injuries including bruises and broken ribs." Doc. 133 at 78. And, plaintiff suffered "substantial, unnecessary, and prolonged pain" because there was a 22 hour delay in medical treatment. *Id.* at 79. He contends defendant Kulow "interfered with prescription of pain medical and prematurely terminated the E.R. exam." *Id.* And, plaintiff asserts, "McBryde, Ward, Gant, and Cantrell, as supervisors, failed to take plaintiff to the doctor ordered follow-up exam despite obvious pain and constant pleas for help." *Id.* at 80. Plaintiff argues defendants' failure to comply with the follow-up order from Dr. Chacon "put plaintiff at serious risk of substantial harm and caused him to suffer substantial unnecessary and prolonged pain." *Id.*

But the summary judgment facts present no triable issue whether Sheriff McBryde, Undersheriff Ward, Captain Gant, Sergeant Cantrell, or Officers Kulow and Gallardo violated his Eighth Amendment rights by denying him medical care for a serious medical need. This is so because plaintiff has failed to establish that his condition was "so obvious that even a lay person" easily would have recognized the need for a doctor's attention. *See Mata*, 427 F.3d at 751. And, plaintiff hasn't shown that any defendant was obligated to take him to a follow-up exam or that one was "obviously" required for his condition.

First, plaintiff claims he was denied medical care for 22 hours on June 15, 2014. But the summary judgment facts don't establish that his condition on June 15 objectively required medical care. When speaking to Sergeant Cantrell and Officer Kulow on June 15, plaintiff only showed bruising and scratches. And, plaintiff's description of his pain was consistent with those

external symptoms. Also, when notified by another officer that plaintiff's description of his condition had worsened, Cantrell immediately contacted her supervisor and arranged for medical care. And Kulow accompanied plaintiff to the emergency room within 30 minutes. Thus, the summary judgment facts, when construed in a light most favorable to plaintiff, shows merely that Cantrell first determined that plaintiff did not require medical care based on her observation. Then, after his condition worsened, she promptly arranged for plaintiff's medical treatment. And, Officer Kulow took plaintiff to receive that medical treatment. Thus, the summary judgment facts don't present a triable issue whether plaintiff can meet the objective standard to show that his condition "obviously" warranted a doctor's attention on June 15, 2014.

Second, plaintiff asserts that Officer Kulow interfered with the treatment he received at the emergency room by preventing the doctor from prescribing pain medication and cutting the appointment short. But the summary judgment evidence does not support these claims. The medical records from the emergency room visit note no restriction on the doctor's ability to prescribe medication, or a time limitation on the appointment. Doc. 125-10 at 6. Instead, the medical records show that plaintiff received medical attention for two hours. *Id.* at 2–4 (patient arrived at 4:58 pm and departed at 7:00 pm). And, the doctor prescribed an antibiotic for plaintiff's skin condition. Plaintiff's contention that the medical records are incomplete or inaccurate is not supported by the record. Indeed, plaintiff stipulated to the admissibility of the medical records. Doc. 120 at 2. And so, the court concludes that the record does not present a triable issue on plaintiff's claim that Officer Kulow interfered with his treatment at the emergency room.

Next, plaintiff asserts that Sheriff McBryde, Undersheriff Ward, Captain Gant, Sergeant Cantrell, and Officers Kulow and Gallardo denied him medical care because they did not take

him to a follow-up appointment. The record shows Dr. Chacon recommended a follow-up exam with a primary care provider. Doc. 125-10 at 1. But, the record does not present a genuine issue whether plaintiff's condition was so severe that it obviously required medical attention. Plaintiff does not allege that he sustained new injuries after June 14, 2014. Thus, any additional medical care was requested for the injuries treated in the emergency room on June 15, 2014. To treat those injuries, plaintiff was given his prescribed medication twice daily, but he refused treatment several times. Doc. 125-7 at 1. Nothing in the summary judgment record shows that plaintiff's condition worsened or obviously required additional medical treatment. The court thus concludes plaintiff cannot show that defendants Sheriff McBryde, Undersheriff Ward, Captain Gant, Sergeant Cantrell, and Officers Kulow and Gallardo violated his right to medical treatment under the objective prong. The court thus grants summary judgment against plaintiff's denial of medical care claim for this reason.

### 2. Eighth Amendment Analysis: Subjective Component

Even if plaintiff had presented a triable issue on the objective component of the analysis, the court would grant summary judgment against this claim for a second, independent reason. The summary judgment facts present no triable issue on the subjective component of an Eighth Amendment violation.

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751 (citing *Estelle*, 429 U.S. at 106). This prong is satisfied when the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Whether the prison official had the requisite knowledge of a substantial risk to an inmate's health or safety 'is a question of fact subject to demonstration in the usual ways, including

inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 842). "A prison official who serves as a gatekeeper for other medical personnel capable of treating the condition" may be liable under the deliberate indifference standard if he or she "delays or refuses to fulfill that gatekeeper role." *Mata*, 427 F.3d at 751 (citations omitted).

Here, the record presents no genuine issue for trial whether any defendant was deliberately indifferent to plaintiff's medical needs. On the contrary, the record shows that when plaintiff requested medical care, SCJ personnel observed him. And, when plaintiff needed medical care, it was arranged. The fact that plaintiff disagrees with defendants' assessment of his condition does not make their decision not to elevate his requests for medical assistance "indifferent" to his needs. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel or unusual punishment.").

Also, plaintiff's contention that he was not taken to a follow-up appointment does not rise to deliberate indifference. *Shue v. Laramie Cty. Detention Ctr.*, 594 F. App'x 941, 946 (10th Cir. 2014) ("[M]ere negligence is insufficient to establish deliberate indifference rising to the level of a cognizable Eighth Amendment violation."). The record, at best, shows defendants neglected to take plaintiff to the doctor to follow up on his care from the Emergency Room. Nothing in the record shows that one or more defendants deliberately withheld medical care from plaintiff. Plaintiff thus fails to shoulder his burden to show he had a right to medical treatment or that the right was violated.

### ii. Does the summary judgment evidence present a triable issue of a clearly established right?

Even if the court assumes a constitutional violation occurred, defendants still deserve qualified immunity because no precedent clearly establishes plaintiff's right to medical care under these circumstances. "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "And although there need not be a case precisely on point for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* "This high bar ensures qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* If the law was not clearly established when the incident occurred, the court should grant summary judgment for the defendant. *See Stevenson*, 733 F. App'x at 945 (affirming the district court's grant of summary judgment for defendants because there was no Supreme Court, Tenth Circuit, or other circuit court case "sufficiently on point" to place the constitutional question beyond debate).

Plaintiff makes two arguments against the qualified immunity. First, he argues he had a clearly established right to immediate medical care for his injuries. And, second, plaintiff asserts that he had a clearly established right to follow-up medical treatment. The court addresses each argument, below.

### 1. Plaintiff's right to immediate medical treatment is not clearly established.

Here, plaintiff hasn't cited any precedent placing the relevant constitutional question beyond debate. Plaintiff first argues that his condition on June 15, 2014 was serious enough for

a lay person to recognize the need for medical treatment.  Doc. 133-1 at 66.  Plaintiff points to

non-defendant Rose's and defendant Gant's recognition of his injuries as serious enough to merit

medical treatment.  *Id.*  He argues that "conditions that cause significant pain are 'serious

medical needs.'"  *Id.* at 67 (first citing *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir.

2001), then citing C*ooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996)).  Next, plaintiff argues

that defendants were "deliberately indifferent" to his medical needs.  *Id.* at 68.  But though

plaintiff cites many cases, none of them are sufficiently on point to place the constitutional

question beyond debate.

Plaintiff directs the court to *Reed v. Dunham*, a Tenth Circuit case where the court held

that a two-hour delay in medical treatment for an inmate's "apparently serious stab wounds" was

not a frivolous claim.  *Reed v. Dunham*, 893 F.2d 285, 287 (10th Cir. 1990).  Plaintiff argues that

his case is similar because he notified SCJ staff he was "beaten by the night shift and needed

medical care" but that care was delayed for an additional nine hours.  Doc. 133-1 at 70–71.

Plaintiff also cites an Eighth Circuit case, *Boswell*, 842 F.3d at 1122–23, for the proposition that

"indifference or delay by non-medical personnel constitutes deliberate indifference."  Doc. 133-1

at 72.  Plaintiff argues defendants should not have been allowed to use their own, non-medical

judgment to determine whether he was entitled to medical care.  *Id.* at 72.  Plaintiff also argues

SCJ's written policies provide "circumstantial evidence" that defendants "knew of a substantial

risk of harm" to plaintiff.  *Id.* at 77 (citing *Mata*, 427 F.3d at 754).

The court is not persuaded by plaintiff's argument.  Plaintiff cites no case sufficiently

analogous to plaintiff's case.  *Reed* involved life-threatening, readily observable and apparent

injuries to the plaintiff.  *Reed*, 893 F.2d at 287.  Similarly, *Boswell* is not analogous to plaintiff's

case nor binding on the court.  In *Boswell*, defendants denied a pregnant woman medical care—

when she had complained of bleeding and significant pain—until she began to miscarry her pregnancy. *Boswell*, 842 F.3d at 1122–23. And, in *Mata*, the plaintiff complained of severe chest pain, which was dismissed until after the plaintiff suffered a heart attack. *Mata*, 427 F.3d at 754–55. Here, when plaintiff requested medical care, his symptoms included scratches and complaints of pain. Plaintiff's case does not involve life-threatening injuries. And, plaintiff cannot direct the court to a Tenth Circuit or Supreme Court case that involved scratches and bruises.

The closest case plaintiff presents is from the Seventh Circuit. *See Cooper*, 97 F.3d at 916–17. In *Cooper*, the Seventh Circuit held that "[w]hen guards use excessive force on prisoners, the requirements for proving deliberate indifference to the medical needs of the beaten prisoners ought to be relaxed somewhat." *Id.* at 917. The Circuit upheld the plaintiff's damage award. *Id.* at 921. But, it also noted that "[i]t would be a different case if . . . the existence of gravity of the particular medical harm were outside a layperson's, and hence the jury's, understanding." *Id.* at 917. The Tenth Circuit has never relied upon *Cooper*, and the court concludes *Cooper* does not represent "clearly established" authority from other courts or facts "'particularized' to the facts of the case" here. *Rife v. Jefferson*, 742 F. App'x 377, 381 (10th Cir. 2018).[13]

### 2. Plaintiff's right to follow-up medical care is not clearly established.

Plaintiff also fails to establish that his right to follow-up medical care was clearly established at the time of the alleged violation. Plaintiff contends that "the touchstone of adequate medical care is that an informed professional judgment has been made." Doc. 133-1 at

---

[13] The court notes that defendants Torres, Bailem, and Steckel have not moved for summary judgment on plaintiff's claims, which includes a claim that they denied him medical care. Doc. 125 at 3; Doc. 152 at 34. So, the court draws no conclusion about the merits of that claim.

77.  Plaintiff argues that Dr. Chacon's recommendation that he follow up with SCJ's provider established his right to receive a follow-up visit.  *Id.*  While plaintiff fails to cite a case that establishes the right to follow-up care, the court has located one unpublished Tenth Circuit case that discusses the right.  *Stepnay v. Goff*, 164 F. App'x 767 (10th Cir. 2006).

There, the Circuit noted that—if the plaintiff amended his complaint—it was possible his claim that defendants delayed in procuring adequate follow-up medical care for his staph infection would survive dismissal.  *Id.* at 771.  But, the Circuit did not definitively hold that such a delay was actionable on its own.  Instead, the Circuit held that "[a]ssuming the other elements are met, delaying in providing [plaintiff] follow-up medical care may constitute a constitutional violation."  *Id.*  "Such delay, however, must have 'resulted in substantial harm.'"  *Id.* (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)).  The summary judgment evidence fails to show a delay in plaintiff's follow-up medical treatment resulted in substantial harm.  And, plaintiff cannot identify a published Tenth Circuit case that clearly establishes his right to follow-up medical care.  Thus, the court concludes plaintiff has no clearly established his right to follow-up medical care. t

In short, plaintiff has failed to show that his right to medical care in this case, either from Sergeant Cantrell, Officer Kulow, or Captain Gant, or follow-up medical care from any defendant, was clearly established at the time of the alleged violation.  Plaintiff thus fails to overcome defendants Cantrell, Kulow, McBryde, Ward, Gallardo, and Gant's qualified immunity defense because he has failed to present a triable issue on a violation of a clearly established constitutional right.  Consequently, defendants Cantrell, Kulow, McBryde, Ward, Gallardo, and Gant are entitled to qualified immunity as a matter of law against plaintiff's denial of medical care claims.

### d. Conspiracy Claims

Plaintiff's last § 1983 claim alleges defendants conspired to "deny medical care," "deny use of force," "falsify documents and reports," "make false statements," and "cover up assault and battery." Doc. 120 at 15. The parties agree that a conspiracy claim requires "a combination of two or more persons acting in concert and an allegation of a meeting of the minds among the defendants or a general conspiratorial objective." Doc. 125 at 27 (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010)); *see also* Doc. 133-1 at 122 (citing *Brooks*, 614 F.3d at 1227–28). But, at best, plaintiff just makes conclusory allegations that Torres, Bailem, and Steckel "had a meeting of the minds" to create "a false 'suicide watch' scenario." Doc. 133-1 at 122. And, plaintiff argues that the "conspiratorial objective" was to "destroy the videos [of the incident]" and make false statements to avoid liability. *Id.* But the summary judgment facts won't support plaintiff's arguments.

Plaintiff merely cites to his allegations in the Pretrial Order. *See id.* He does not direct the court to any admissible evidence to support these claims. Thus, even viewing the summary judgment facts in the light most favorable to plaintiff, the court cannot find a genuine issue of material fact for plaintiff's conspiracy claims. So, the court grants defendants' Motion for Summary Judgment against plaintiff's conspiracy claims.

### 2. State Law Claims

Plaintiff asserts a variety of state-law tort claims against defendants, including claims for assault, battery, neglect of duty, negligent failure to protect, intentional infliction of emotional distress, and mistreatment of a confined person. Doc. 120 at 15. Defendants contend that plaintiff failed to comply with Kan. Stat. Ann § 12-105b(d), which required plaintiff to give written notice to a municipality before bringing a tort suit against one of its employees. *See*

*Cano v. Denning*, No. 12-2217-KHV, 2013 WL 322112, at *8 (D. Kan. Jan. 28, 2013); *Miller v. Brungardt*, 916 F. Supp. 1096, 1099 (D. Kan. 1996). Plaintiff concedes he did not file a notice of his claims. Doc. 120 at 2. Instead, plaintiff "contends that notice of claim requirements do not apply to 42 U.S.C. § 1983 actions." *Id.* Plaintiff also argues that his first Complaint, filed in 2015, was sufficient notice of his lawsuit. Doc. 133-1 at 118. And, plaintiff asks the court to exercise supplemental jurisdiction over his claims.

Under Kansas law, the "notice requirement is a condition precedent to suit against a municipality." *Cano*, 2013 WL 322112, at *8. Plaintiff did not allege notice in his Second Amended Complaint. And, plaintiff concedes he did not provide the required notice. Doc. 133-1 at 118. Without the required notice, the court lacks subject matter jurisdiction over any tort claims against employees of Seward County, Kansas. *See Folkers v. Drill*, No. 14-CV-02429-DDC-TJJ, 2015 WL 4598777, at *7 (D. Kan. July 29, 2015) ("The filing of a proper notice is a prerequisite to the filing of an action in district court and if it is not met the court cannot obtain jurisdiction over the municipality." (citations and internal quotations omitted)). The court cannot get around this jurisdictional bar by choosing to exercise supplemental jurisdiction, as plaintiff requests. "Noncompliance with the statute means subject matter jurisdiction does not exist over the claim, because compliance is a prerequisite to filing a claim." *Parisi v. Unified Gov't of Wyandotte Cty.*, 429 P.3d 627 (Table), 2018 WL 5728439, *5 (Kan. Ct. App. 2018). Accordingly, the court dismisses plaintiff's state law tort claims without prejudice for lack of subject matter jurisdiction.

## IV.   Conclusion

For all these reasons, the summary judgment facts viewed in plaintiff's favor present no triable issue on all of plaintiff's § 1983 and state law tort claims against defendants Bill

McBryde, Gene Ward, Rob Gant, Teresa Cantrell, Randolf Graves, Tyler Kulow, Ambrose Gallardo, and the Seward County Board of Commissioners.  There is also no triable issue on plaintiff's § 1983 conspiracy claims or state law tort claims against defendants Clemente Torres, Steve Bailem, and John "Trey" Steckel.  The court thus grants defendants' Motion for Summary Judgment.[14]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 124) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Leave to File Rebuttal to Reply (Doc. 153) is denied.

**IT IS SO ORDERED.**

**Dated this 3rd day of January, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[14]     As explained earlier in this Order, defendants didn't move for summary judgment on plaintiff's § 1983 claims for excessive force and denial of medical care against Clemente Torres, Steve Bailem, and John "Tray" Steckel.  So, those claims remain for trial.